UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| ERIC SCHWENK,<br><br>    Petitioner,<br><br>v.<br><br>JIM MCDONALD, et al.,<br><br>    Respondent. | Case No. 5:14-cv-04971-EJD<br><br>**ORDER GRANTING IN PART MOTION FOR EVIDENTIARY HEARING AS TO PORTION OF CLAIM 1; DENYING CLAIMS 2 THROUGH 7 OF PETITION FOR WRIT OF HABEAS CORPUS**<br><br>Re: Dkt. No. 24 |

   Petitioner Eric Schwenk filed a petition for a writ of habeas corpus under 28 U.S.C. §2254 challenging his state conviction. Respondent filed an answer on the merits (Dkt. 17), and Petitioner filed a traverse (Dkt. 22). Petitioner also filed a motion for an evidentiary hearing (Dkt. 24), which has been fully briefed. For the reasons set forth below, the motion for an evidentiary hearing is granted in part as to the portion of Claim 1 of the petition that is based upon counsel's alleged failure to convey a 13-year offer. The petition for a writ of habeas corpus is denied as to the remaining claims for the reasons set forth below.

## **I. BACKGROUND**

   Defendant was convicted following a second jury trial of two counts of lewd acts upon a child (Penal Code §288), and admitted that he suffered a prior conviction of the same offense for purposes of sentence enhancement. In August of 2010, Petitioner was sentenced to an aggregate term in state prison of thirty (30) years. Petitioner appealed his conviction. On appeal, the Court of Appeal for the First Appellate District, Division One, struck a 5-year enhancement and otherwise affirmed the judgment in May of 2013. The Court of Appeal summarily denied the

habeas petition the same day. Petitioner filed a petition for review and petition for writ of habeas corpus in the California Supreme Court, which were both summarily denied. On March 18, 2014, Petitioner was resentenced to twenty-five (25) years. Petitioner filed the instant habeas petition on November 10, 2014.

## II. STATEMENT OF FACTS

The following facts are taken from the opinion of the California Court of Appeal on direct appeal[1]:

> Defendant was convicted of lewd acts committed in 2002 on Bryce B., the son of defendant's "girlfriend" Christie B.[2] Bryce was then 10 years old, and lived primarily in Eureka with Christie and defendant. Bryce had a "very trusting" relationship with defendant, and considered him "like a second father." Defendant often cared for Bryce at night while Christie worked.
>
> One night in 2002, Bryce was in the bedroom normally occupied by defendant and Christie, sleeping on his side, facing away from defendant. Christie was not present. Bryce awoke to find defendant's thumb and forefinger touching his penis. Bryce acted like he "was sleeping" for a couple of minutes while the touching continued, until the alarm went off and defendant "got up and got ready for work." Defendant did not say anything to Bryce, and never spoke to him about the "fondling" incident. Thereafter, Bryce "stayed away" from defendant, although defendant did not change his behavior toward Bryce. Bryce "didn't say anything about it" to his mother, or anyone else.
>
> Bryce also testified that a few months before the fondling occurred, defendant rented a pornographic movie that depicted "naked women" playing with "sex toys." He and defendant watched the movie for "awhile" in the bedroom. The same night—although Bryce was not sure if the movie was playing—he and defendant rubbed lotion on each other. Bryce recalled that he was wearing pajama bottoms, but no shirt.
>
> The two incidents went unreported to anyone until Bryce was 14 years old, and his father Andrew discovered that defendant was registered as a sex offender. Andrew told Christie he did not want defendant in the same house as Bryce. Christie then told Bryce that defendant may move out of the house, whereupon Bryce disclosed to her that while he was at work he "had gotten into bed" with defendant "because he was afraid of the dark." He awoke with defendant's "hand on his penis." Bryce asked Christie "not to tell anyone."
>
> The next morning Christie confronted defendant, and he told her "the same story." Defendant explained that while he was asleep he "had accidentally touched Bryce." When he awakened he was "horrified" at what occurred. He immediately told Bryce to "get out of

---

[1] This summary is presumed correct. <u>Hernandez v. Small</u>, 282 F.3d 1132, 1135, n.1 (9th Cir. 2002); 28 U.S.C. §2254(e)(1).

[2] For the sake of clarity, convenience and confidentiality we will refer to Bryce, his mother Christie B, and father Andrew B. by their first names.

CASE NO.: 5:14-CV-04971-EJD
ORDER GRANTING IN PART MOTION FOR EVIDENTIARY HEARING AS TO PORTION OF CLAIM 1; DENYING PETITION FOR WRIT OF HABEAS CORPUS AS TO CLAIMS 2 THROUGH 7

2

the bed" and leave the room. Defendant was "sincerely upset and apologetic." He moved out of the house immediately. In subsequent conversations with Christie defendant reiterated that he apologized "for what he did."

The molestation was not reported or discussed with anyone else until Bryce was 16 years old and attended counseling "on an unrelated issue." Bryce told the counselor he "was molested" by defendant. In turn, the counselor reported the molestation to the police. As part of the ensuing investigation the police officers directed Bryce to make a pretext phone call to defendant in an attempt to seek admissions from him. In response to Bryce's inquiry during the recorded telephone conversation defendant stated that he was not "trying to have sex" with the victim, and stopped when he "realized what [he] was doing." Defendant described the act as a "weird show of affection." He expressed that he knew "it was hurtful," and was "really sorry" he "hurt" Bryce.

Defendant testified that he had "clear recollection" of the molestation incident. After work that day he drank beer and smoked marijuana. He was "very much" intoxicated when he went to bed by himself around 10:00. Bryce was "on his computer" when defendant retired. When defendant awoke, he was lying on his side with his hand was on Bryce's penis. Defendant was "in shock["], and "freaked out" that Bryce was "even in there." He immediately removed his hand and directed Bryce to return to his own bedroom. The act was not intended, but just "happened."

According to defendant's testimony, the "massage incident" occurred when Bryce was 13 years old, long after the "bed incident." Defendant recalled that Bryce offered to put lotion on his back, and defendant agreed. Defendant then rubbed lotion on Bryce's back. They both had their shirts off, but were clothed from the waist down. Defendant insisted "there was nothing sexual about it."

As for watching "porn," defendant testified that on one occasion, entirely separate from the massage incident, he invited Bryce, who was then, "13 years old," to look at a movie of "Amazon women," naked from the waist up. No sexual acts occurred in the movie. After five or ten minutes Bryce became uncomfortable, so defendant changed the channel.

Defendant also offered testimony that described two separate events that resulted in his 1995 conviction for child molestation. Defendant admitted that he intentionally touched his daughter's friend "in the private area over her pajamas," when she was 10 or 11 years old, and sleeping over at the house. Thereafter, but also in 1995, defendant rolled over unintentionally and touched his daughter "in the privates," when she was in bed. When defendant realized he was touching his daughter he "stopped," and told her he "was sorry and that it would never happen again." As a result of his prior conviction, defendant was incarcerated, then placed on probation and received counseling.

Defendant's daughter, Rebecca W., essentially corroborated defendant's version of the incident with her. Rebecca testified that one night in 1995 she crawled into bed with her mother and defendant. For less than a minute defendant placed his hand on her genitals, then stopped. Rebecca was not even sure defendant was awake. When defendant realized "what he had done," he apologized and kissed Rebecca on the forehead before she left the room. Rebecca testified that on no other occasion did defendant engage in inappropriate conduct with her, and she was never angry with him. Rebecca believed the touching was an "honest mistake that he never meant to happen."

CASE NO.: 5:14-CV-04971-EJD
ORDER GRANTING IN PART MOTION FOR EVIDENTIARY HEARING AS TO PORTION OF CLAIM 1; DENYING PETITION FOR WRIT OF HABEAS CORPUS AS TO CLAIMS 2 THROUGH 7

> Testimony was also adduced by the defense from defendant's son and a friend of defendant's mother that after the molestation incident Bryce did not change his behavior, appear to be uncomfortable around defendant, or express any "bad feelings" toward defendant. The witnesses did not notice any inappropriate conduct by defendant directed at Bryce.

People v. Schwenk, No. A129685, 2013 WL 1898635, at *1-3 (Cal. Ct. App. May 8, 2013) (footnote in original).

### III.  STANDARD OF REVIEW

This Court may entertain a petition for a writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a); Rose v. Hodges, 423 U.S. 19, 21 (1975).  The writ may not be granted with respect to any claim that was adjudicated on the merits in state court unless the state court's adjudication of the claim:  "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." Williams v. Taylor, 529 U.S. 362, 412-13 (2000).  The only definitive source of clearly established federal law under 28 U.S.C. § 2254(d) is in the holdings (as opposed to the dicta) of the Supreme Court as of the time of the state court decision.  Williams, 529 U.S. at 412; Brewer v. Hall, 378 F.3d 952, 955 (9th Cir. 2004).  While circuit law may be "persuasive authority" for purposes of determining whether a state court decision is an unreasonable application of Supreme Court precedent, only the Supreme Court's holdings are binding on the state courts and only those holdings need be "reasonably" applied.  Clark v. Murphy, 331 F.3d 1062, 1069 (9th Cir.), overruled on other grounds by Lockyer v. Andrade, 538 U.S. 63 (2003).

CASE NO.: 5:14-CV-04971-EJD
ORDER GRANTING IN PART MOTION FOR EVIDENTIARY HEARING AS TO PORTION OF CLAIM 1; DENYING PETITION FOR WRIT OF HABEAS CORPUS AS TO CLAIMS 2THROUGH 7

4

"Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." Williams, 529 U.S. at 413. "Under § 2254(d)(1)'s 'unreasonable application' clause, . . . a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." Id. at 411. A federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable." Id. at 409. The federal habeas court must presume to be correct any determination of a factual issue made by a state court unless the petitioner rebuts the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

The Supreme Court has vigorously and repeatedly affirmed that under AEDPA, a federal habeas court must give a heightened level of deference to state court decisions. See Hardy v. Cross, 565 U.S. 65 (2011) (per curiam); Harrington v. Richter, 562 U.S. 86, 101 (2011); Felkner v. Jackson, 562 U.S. 594, 131 S. Ct. 1305 (2011) (per curiam). As the Court explained: "[o]n federal habeas review, AEDPA 'imposes a highly deferential standard for evaluating state-court rulings' and 'demands that state-court decisions be given the benefit of the doubt.'" Id. at 1307 (citation omitted). With these principles in mind regarding the standard and limited scope of review in which this Court may engage in federal habeas proceedings, the Court addresses Petitioner's claims.

## IV. DISCUSSION

Petitioner asserts the following grounds for relief: (1) denial of due process and effective assistance of counsel at trial; (2) denial of the right to a fair sentencing hearing; (3) denial of due process and effective assistance of counsel at the sentencing hearing; (4) denial of due process based upon the trial court's admission of Petitioner's prior conviction; (5) violation of the Double Jeopardy Clause and due process when allegations of a prior conviction were revived at the second

CASE NO.: 5:14-CV-04971-EJD
ORDER GRANTING IN PART MOTION FOR EVIDENTIARY HEARING AS TO PORTION OF CLAIM 1; DENYING PETITION FOR WRIT OF HABEAS CORPUS AS TO CLAIMS 2THROUGH 7

5

trial; (6) denial of due process based upon the trial court's admission of a sentence enhancement for a prior conviction; and (7) denial of due process based upon imposition of a term greater than the statutory maximum (see e.g. Apprendi v. New Jersey, 530 U.S. 466 (2000)). Claims 1 through 3 were raised in the state courts on habeas corpus and were summarily denied. Claims 4 through 7 were raised in the state appellate court. The appellate court affirmed the judgment in a written opinion. See People v. Schwenk, No. A129685, 2013 WL 1898635 (Cal. Ct. App. May 8, 2013). The California Supreme Court summarily denied review of both Petitioner's petition for review (Dkt. 19-4, p. 264) and habeas petition (Dkt. 19-4, p.266).

**Claim 1: Ineffective Assistance of Counsel**

Petitioner contends that counsel was ineffective in (a) failing to convey to him the District Attorney's multiple offers of plea bargains for 3- to 16-year sentences; (b) failing to negotiate for a more favorable bargain after the first jury hung and the court granted a new trial; and (c) failing to consult with an expert regarding the likelihood Petitioner would be committed as a SVP. Petitioner contends he was prejudiced by these failures in that he would have accepted the District Attorney's offers and/or made counter-offers, and the result of the proceeding would have been more favorable. Petitioner requests an evidentiary hearing. Pet. at 87-89.

To prevail on an ineffective assistance of counsel claim, a defendant must show that counsel's performance "fell below an objective standard of reasonableness" Strickland v. Washington, 466 U.S. 668, 688 (1984). A defendant must also show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. "A court considering a claim of ineffective assistance must apply a 'strong presumption' that counsel's representation was within the 'wide range' of reasonable professional assistance." Id. at 689. "The challenger's burden is to show 'that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Id. at 687.

When reviewing a claim of ineffective assistance of counsel, the federal court must "use a

'doubly deferential' standard of review that gives both the state court and the defense attorney the benefit of the doubt." <u>Burt v. Titlow</u>, 571 U.S. 12, 13 (2013). "When §2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied <u>Strickland</u>'s deferential standard." <u>Premo v. Moore</u>, 562 U.S. 115, 123 (2011).

Where, as in the instant case, the state court summarily denies an ineffective assistance of counsel claim without providing a written analysis, the habeas court "must determine what arguments or theories supported or, as here, could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of this Court." <u>Harrington v. Richter</u>, 562 U.S. at 102. This applies to both prongs of an ineffective assistance claim. <u>See</u> <u>Premo</u>, 562 U.S. at 123 (where state court did not specify whether denial was based on performance or prejudice prongs or both, "[t]o overcome the limitation imposed by § 2254(d), the Court of Appeals had to conclude that both findings would have involved an unreasonable application of clearly established federal law").

## A. Alleged Failure to Convey Plea Offers

The Sixth Amendment right to counsel extends to the plea-bargaining process. <u>Lafler v. Cooper</u>, 566 U.S. 156, 162 (2012). "[A]s a general rule, defense counsel has the duty to communicate formal offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused." <u>Missouri v. Frye</u>, 566 U.S. 134, 145 (2012). "[T]he fact of a formal offer means that its terms and its processing can be documented so that what took place in the negotiation process becomes more clear if some later inquiry turns on the conduct of earlier pretrial negotiations." <u>Id</u>. at 146. "To show prejudice from ineffective assistance of counsel where a plea offer has lapsed or been rejected because of counsel's deficient performance, defendants must demonstrate a reasonable probability they would have accepted the earlier plea offer had they been afforded effective assistance of counsel." <u>Id</u>. at 147. "Defendants must also

CASE NO.: 5:14-CV-04971-EJD
ORDER GRANTING IN PART MOTION FOR EVIDENTIARY HEARING AS TO PORTION OF CLAIM 1; DENYING PETITION FOR WRIT OF HABEAS CORPUS AS TO CLAIMS 2THROUGH 7

7

demonstrate a reasonable probability the plea would have been entered without the prosecution canceling it or the trial court refusing to accept it, if they had the authority to exercise that discretion under state law." It is also necessary to show a reasonable probability that the end result of the criminal process would have been more favorable by reason of a plea to a lesser charge or a sentence of less prison time. See id.

Here, Petitioner contends that his counsel received, but failed to communicate, the following plea offers that were made before the first trial: (1) a 3-, 6-, or 8-year sentence on an 8-year term (Petitioner's Exhibit Q), (2) a 6-, 12-, or 16-year term (Id.), (3) an 8-, 11-, or 13-year term, (4) a 13-year term (Petitioner's Exhibits P, Q), and (5) a 13- or 16-year term (Petitioner's Exhibit S). Although there is evidence that the prosecution made offers to defense counsel, the state appellate court could have reasonably determined that the terms of the offers were too indefinite to constitute "formal" offers as defined by Frye, except for the 13-year offer made by the prosecution on October 2, 2008.[3] The first and third offers are based upon nothing more than a handwritten note dated January 15, 2009, indicating an "offer of Ct. I plus prior." Petitioner's Exhibit Q. The second offer is memorialized in an email from the prosecution to defense counsel in which he states Petitioner "can plead to 1 288(a) with the prior. That's 6, 12 or 16 years at 85%. I leave sentencing up to the Court." Id. The fifth offer is based on an email dated September 10, 2009, in which the prosecutor states: "Elan is the DDA and it is ultimately her decision. However, a thought I had was for your client to agree to the aggravated sentence (which he will more than likely get) with his prior, OTB and we won't retry the hung count. The benefit to your

---

[3] Petitioner acknowledges that there are ambiguities in the record regarding the precise terms of the plea offers. Dkt. 1, pp. 65-68. Petitioner contends that he sought, but was unable to obtain any additional information about these plea offers from the District Attorney's Office or the Attorney General. Id. at p.68. Petitioner requests, without any legal support, that the Court treat the District Attorney's and Attorney General's failure to respond to Petitioner's multiple requests for more information as a concession by the Respondent that Petitioner's interpretation of the plea offers is correct. Id. The request is denied because Petitioner has not cited, nor is this Court aware, of any legal basis for a reviewing court to draw the negative inferences Petitioner requests when evaluating habeas corpus petitions.

CASE NO.: 5:14-CV-04971-EJD
ORDER GRANTING IN PART MOTION FOR EVIDENTIARY HEARING AS TO PORTION
OF CLAIM 1; DENYING PETITION FOR WRIT OF HABEAS CORPUS AS TO CLAIMS
2 THROUGH 7

client is, by my calculations 4 years."  Petitioner's Exhibit S.  Other than the 13-year offer made by the prosecution on October 2, 2008, the prosecution did not make any pretrial offers for a specific term of years.  Applying a "doubly deferential standard of review,"[4] the state appellate court could have reasonably determined that even if defense counsel failed to convey the plea offers (other than the 13-year offer), counsel's conduct nevertheless fell within the "wide range" of reasonable professional assistance because <u>Frye</u> only requires counsel to convey formal offers.  <u>Strickland</u>, 466 U.S. at 689.

As for the formal 13-year offer, Petitioner must next establish that counsel rendered ineffective assistance by failing to convey the offer.  <u>Frye</u>, 566 U.S. at 145.  In two separate declarations, Petitioner declares under penalty of perjury that his counsel never told him about any offers.  Decl. of Erick Schwenk, ¶2 ("No one told me about an offer for 16 years or for any other term."); Suppl. Decl. of Eric Schwenk, ¶3 ("I was not told of an offer which would involve a sentence of 8 years, 8 to 13 years, 13 years, 6 to 16 years, or 16 years.").

In contrast, Respondent contends that the state appellate court could have reasonably found that counsel conveyed all plea offers to Petitioner.  Petitioner's defense counsel, Marek Reavis ("Reavis"), told Petitioner's current counsel that "there were no offers that weren't conveyed." Petitioner's Exhibit E (Dkt. 8, p. 38).  There is also evidence that Reavis was in communication with Petitioner regarding plea offers, which provides circumstantial evidence to support Reavis' representation to Petitioner's current counsel that "there were no offers that weren't conveyed." For example, Reavis told Deputy District Attorney Neel that Petitioner would not accept her offer because Petitioner was worried about Sexually Violent Predator ("SVP") proceedings.  <u>See</u> Dkt. 1, p. 70; Petitioner's Exhibit P (Dkt. 28, p. 36).  In an email dated September 10, 2009, Reavis told another prosecutor that he would speak to Petitioner about the prosecution's offer, and that he had spoken to Petitioner "at length" regarding "current SVP laws." Petitioner's Exhibit S (Dkt. 28,

---

[4] <u>Burt v. Titlow</u>, 134 at 13.

p.40).

Respondent's arguments are unavailing in this case because the state appellate court issued a summary denial of Petitioner's claim. A state court's summary decision does not "implicitly" include any factual findings entitled to a presumption of correctness. See Fisher v. Roe, 263 F.3d 906, 913 (9th Cir. 2001) (refusing to infer factual findings from state court summary denial of habeas petition); see also Nunes v. Mueller, 350 F.3d 1045, 1055 (9th Cir. 2003) (no deference for factual findings made without an evidentiary hearing); Killian v. Poole, 282 F.3d 1204, 1207-08 (9th Cir. 2002) (if state court refuses petitioner's request for an evidentiary hearing on a claim, it cannot later argue in federal court that AEDPA deference is owed to its factual determinations). In the absence of any written analysis from the state court, it cannot be presumed that the state court rejected Petitioner's claim based upon a factual finding that Reavis conveyed all plea offers to Petitioner.

There are competing evidence and inferences to be drawn from the evidence outlined above, particularly with respect to the credibility of Petitioner. There is evidence that the prosecution made certain plea offers and Petitioner contends counsel failed to communicate those offers. Reavis represents that "there were no offers that weren't conveyed." Petitioner's Exhibit E (Dkt. 8, p. 38). Given the clash of evidence, the Court finds that an evidentiary hearing is warranted to determine whether defense counsel failed to convey the prosecutor's 13-year offer made on October 2, 2008 to Petitioner. A federal evidentiary hearing is mandatory if: (1) petitioner's allegations, if proven, would establish the right to relief, and (2) the state court trier of fact has not, after a full and fair hearing, reliably found the relevant facts. Williams v. Calderon, 52 F.3d 1465, 1484 (9th Cir. 1995); Jeffries v. Blodgett, 5 F.3d 1180, 1187 (9th Cir. 1993).

Assuming for the sake of argument that defense counsel failed to convey the 13-year offer and the failure to convey the offer fell below an "objective standard of reasonableness,"[5] Petitioner

---

[5] Strickland, 466 U.S. at 687-88.

CASE NO.: 5:14-CV-04971-EJD
ORDER GRANTING IN PART MOTION FOR EVIDENTIARY HEARING AS TO PORTION OF CLAIM 1; DENYING PETITION FOR WRIT OF HABEAS CORPUS AS TO CLAIMS 2THROUGH 7

10

must next establish that he was prejudiced by counsel's deficient performance, i.e., that there is "a reasonable probability" he would have accepted the plea offer.  Frye, 566 U.S. at 147.  Petitioner focuses on the 16-year offer and contends that the disparity between the sentence he received (30 years) and the plea offer are sufficient to show that Petitioner would have taken a plea if it had been conveyed.  Petitioner asserts in his declaration that he "probably would have accepted an offer of 16 years"[6] and that there is no indication in the record that he was not open to negotiating a plea.  Petitioner also relies on the declaration of his mother to corroborate his assertion that he would have taken a plea if it had been conveyed.  Petitioner's mother states that she "believes Petitioner would have respected and followed her advice" to accept a plea bargain.  See Decl. of Joan Schwenk (Dkt. 8, p. 20).  Petitioner asserts that he did not protest his innocence, but rather admitted his conduct and denied sexual intent.  Petitioner requests an evidentiary hearing to establish that he would have accepted any offer and that a judge would have accepted one of the plea offers.

Respondent counters that the state appellate court could have reasonably determined that Petitioner's evidence failed to establish a reasonable probability that he would have accepted an offer.  Respondent contends that Petitioner's assertion that he "probably would have accepted an offer of 16 years" is too equivocal.[7]  Respondent contends that the state appellate court could also have reasonably determined that Petitioner's assertion was not credible because Petitioner did not believe he was guilty.  See Petitioner's Decl., ¶3 (Dkt. 8, p. 5).  See Belton v. Knipp, No. 12-3582 BLF, 2014 WL 3345793, at *14 (N.D. Cal. June 27, 2014) ("a defendant's protestations of complete innocence may undercut the credibility of a hindsight claim that a rejected offer would have been accepted but for counsel's mistaken or incorrect advice"); see also Tapia v. Holland, No. 14-1692 ODW, 2015 WL 1809331, *27 (C.D. Cal. March 9, 2015) (petitioner's consistent

---

[6] Decl. of Eric Schwenk, ¶3 (Dkt. 8, p. 6)
[7] Petitioner asserts more clearly in his supplemental declaration that "I would have taken any of [the offers]."  Petitioner's Supp. Decl., ¶3 (Dkt. 8, p.11).

CASE NO.: 5:14-CV-04971-EJD
ORDER GRANTING IN PART MOTION FOR EVIDENTIARY HEARING AS TO PORTION OF CLAIM 1; DENYING PETITION FOR WRIT OF HABEAS CORPUS AS TO CLAIMS 2THROUGH 7

protestations of innocence weighs against petitioner's assertion that he would have accepted a plea offer but for counsel's allegedly negligent advice). Respondent also highlights portions of the trial record that confirm Petitioner wanted a probation-only sentence and knew that a guilty plea with prison time would have exposed him to civil commitment as a SVP. See Petitioner's Ex. P ("defense was looking for a probation offer"), Ex. S ("he knows that if he goes to prison for a single day your office will file an SVP petition and . . . he will be institutionalized under a civil commitment for the rest of his life"). Respondent also contends that the declaration of Petitioner's mother is too speculative.

As indicated previously, the state appellate court issued a summary denial of Petitioner's claim and a state court's summary decision does not "implicitly" include any factual findings entitled to a presumption of correctness. See Fisher v. Roe, 263 F.3d at 913; see also Nunes v. Mueller, 350 F.3d at 1055. Given the lack of factual record in the state court, the court finds that an evidentiary hearing is necessary to determine whether Petitioner would have accepted the prosecutor's 13-year offer made on October 2, 2008 and whether the trial court would have approved the plea. See Williams v. Calderon, 52 F.3d at 1484; Jeffries v. Blodgett, 5 F.3d at 1187.

### B. Alleged Failure to Pursue Plea Negotiations

Petitioner contends that defense counsel rendered ineffective assistance by failing to negotiate for a more favorable plea after the first jury trial. Petitioner has not cited to any Supreme Court authority requiring defense counsel to negotiate for a favorable plea under the factual circumstances of this case. To the contrary, the Supreme Court has stated that a defendant does not have a constitutional right to a plea bargain. Weatherford v. Bursey, 429 U.S. 545, 561(1977). Moreover, Petitioner has not and cannot show that the prosecution would have made a plea offer after the first trial, what the terms of such an offer would have been, that Petitioner would have accepted it, and that the trial court would have approved it. The state court's denial of this highly speculative claim was not contrary to, nor did it involve an objectively unreasonable

CASE NO.: 5:14-CV-04971-EJD
ORDER GRANTING IN PART MOTION FOR EVIDENTIARY HEARING AS TO PORTION OF CLAIM 1; DENYING PETITION FOR WRIT OF HABEAS CORPUS AS TO CLAIMS 2THROUGH 7

12

United States District Court
Northern District of California

application of clearly established Supreme Court authority.  Petitioner is not entitled habeas relief on this claim.

### C.  Alleged Failure to Consult With Expert

Petitioner contends that his trial counsel rendered ineffective assistance in failing to consult with an expert regarding the likelihood that Petitioner would be committed as a SVP. Petitioner relies on the declaration of Douglas R. Korpi, Ph.D, who opined that Petitioner "suffers a Pedophilia, with his primary attraction being to girls."  Petitioner's Exhibit O, p. 14.  Dr. Korpi noted that, including the present conviction, Petitioner had twice been convicted of sexual offenses for behavior from the early 1990's to 2002.  Id. at 9.  Dr. Korpi opined that Petitioner "presents with a Moderate to Moderate-High risk to sexually reoffend in the future." Id. at 13.  Dr. Korpi also opined that Petitioner's risk of sexually reoffending "is probably Low- Moderate," or 3 to 17 percent over five to ten years.  Id.  Dr. Korpi found that Petitioner met the first and second criteria under California's SVP statute because he had multiple lewd act convictions and had the mental disorder of Pedophilia.  Id at 13.  Dr. Korpi opined that the third criterion, namely whether Petitioner was likely to reoffend in a sexually violent or predatory fashion, was not met.  Id. at 13-14.  In conclusion, Dr. Korpi stated that many, if not most, of his colleagues would find that Petitioner did not meet SVP criteria; however, Dr. Korpi also acknowledged that other evaluators would find to the contrary.  Id. at 14.

The state appellate court could have reasonably determined that defense counsel's failure to consult with an SVP evaluator for purposes of plea bargaining did not "[fall] below an objective standard of reasonableness."  Strickland, 466 U.S. at 688.  The Supreme Court has declined to delineate a defense attorney's duties in plea negotiations.  Frye, 132 S.Ct. at 1408.  Further, the Supreme Court has observed that there are "'countless ways to provide effective assistance in any given case.'"  Harrington v. Richter, 562 U.S. at 106 (quoting Strickland, 466 U.S. at 689).  It is, therefore, at least arguable that a reasonable attorney could decide to forego consulting with an SVP evaluator and focus instead on trial because SVP proceedings are usually not initiated unless

and until a defendant is eligible for parole.  Id.  ("[c]ounsel is entitled to balance limited resources in accord with effective trial tactics and strategies").

The state appellate court could also have reasonably determined that the failure to consult with an SVP evaluator did not prejudice Petitioner.  Petitioner remembers being told by his counsel that it was unlikely he would be committed as an SVP.  Supp. Decl. of Eric Schwenk, ¶4 (Dkt. 8, p. 11).  This is consistent with Dr. Korpi's opinion.  Furthermore, Dr. Korpi could not predict with any certainty whether or not Petitioner would be committed as an SVP.  Petitioner has failed to show that counsel's advice would have been different if he had consulted with an expert. Petitioner is not entitled to relief on this claim.

## Claim 2:   Denial of Due Process And Effective Assistance of Counsel at Sentencing Hearing

Petitioner contends he was denied due process and effective assistance of counsel during the sentencing hearing.  During the sentencing hearing, Andrew Beers, the father of the victim, told the sentencing judge that a 16-year offer had been made and that Petitioner had "obviously declined and put all of us through two years of court appearances and having to relive this betrayal and molestation again and again."  RT 1300.  Petitioner contends that the judge could have inferred from that information that Petitioner deserved the maximum sentence.  Petitioner contends that the prosecutor exploited the impression created by Mr. Beers by arguing that Petitioner should receive an aggravated sentence because he "sees no responsibility in his conduct."  RT 1302.  Petitioner further contends that the sentencing judge accepted the prosecutor's argument (RT 1306), because the judge remarked, that "what I've seen is a failure to accept responsibility."  Petitioner contends that defense counsel was ineffective in failing to inform the sentencing court that Petitioner had not refused the 16-year offer (or any other offers).

### Due Process Claim

The Supreme Court has held that a defendant has a due process right to a sentencing hearing based on truthful information.  Roberts v. United States, 445 U.S. 552, 556 (1980); see also U.S. v. Alvarado-Martinez, 556 F.3d 732, 734-35 (9th Cir. 2009) ("[D]ue process requires

that a defendant be sentenced on the basis of accurate information.").  Assuming for the sake of argument that Mr. Beers' statement regarding the 16-year plea offer was inaccurate, the state court's summary denial of Petitioner's claim was not contrary to, or involve an unreasonable application of, clearly established Federal law as determined by the Supreme Court of the United States.

The state appellate court could reasonably have determined that Mr. Beers' comments did not influence the sentencing court.  At the beginning of the sentencing hearing, the court announced its tentative ruling to sentence Petitioner to 30 years.  The sentencing court next heard argument from defense counsel, who asserted that Petitioner had deep remorse, and Mr. Beers followed.  See Dkt. 19, pp. 38-53.  Immediately after Mr. Beers completed his statement, the sentencing court did not make any comments and instead simply directed the prosecutor to proceed with her argument.  Id. at p. 49.  The prosecutor argued, among other things, that Petitioner "sees no responsibility in his conduct.  He still mitigates it by saying he was drinking alcohol and doing marijuana."  Id. at p. 50.  It was only after the prosecutor concluded that the sentencing court stated:  "With respect to Mr. Schwenk exercising or showing some remorse, I haven't really seen that.  What I've seen is a failure to accept responsibility, and that's his right.  That's what our criminal justice system is about.  But that's my reading of the situation."  Id. at p. 54.  Given the sequence of speakers, the state appellate court could have reasonably concluded that the prosecutor's argument, not Mr. Beers' comments, influenced the sentencing court's assessment of Petitioner's lack of remorse.

The state appellate court could also have reasonably determined that Beer's comments did not influence the sentencing court and were not prejudicial because the court ultimately imposed the sentence it had tentatively planned to impose.  This case is distinguishable in this regard from United States v. Weston, 448 F.2d 626 (9th Cir. 1971), upon which Petitioner relies.  In Weston, the court initially indicated a five year sentence but then imposed a twenty year sentence after considering unsubstantiated information in a presentence report.

CASE NO.: 5:14-CV-04971-EJD
ORDER GRANTING IN PART MOTION FOR EVIDENTIARY HEARING AS TO PORTION OF CLAIM 1; DENYING PETITION FOR WRIT OF HABEAS CORPUS AS TO CLAIMS 2THROUGH 7

15

The state appellate court could also have reasonably applied a legal presumption that the sentencing court properly applied the law and considered only admissible evidence in calculating Petitioner's sentence.  See Williams v. Stewart, 441 F.3d 1030, 1053 (9th Cir. 2006) (quoting Gretzler v. Stewart, 112 F.3d 992, 1009 (9th Cir. 1997) ("[I]n the absence of any evidence to the contrary, we must assume that the trial judge properly applied the law and considered only the evidence he knew to be admissible.")).  Petitioner is not entitled to relief on this claim.

Ineffective Assistance of Counsel Claim

The Strickland standard applies to claims for ineffective assistance of counsel in noncapital sentencing proceedings.  Daire v. Lattimore, 812 F.3d 766, 767-68 (9th Cir. 2016) (citing Glover v. United States, 531 U.S. 198, 202-04 (2001) and Lafler v. Cooper, -- U.S. --, 132 S.Ct. 1376 (2012)).  Here, because the sentencing court imposed the tentative sentence it announced at the beginning of the hearing, Petitioner cannot satisfy the second prong of the Strickland standard, namely that but for defense counsel's conduct, there is a reasonable probability that "the result of the proceeding would have been different."  Strickland, 466 U.S. at 688.  Petitioner is not entitled to habeas relief on his claim of ineffective assistance of counsel during the sentencing hearing.

**Claim 3:  Denial of Due Process and Effective Assistance of Counsel At Sentencing Hearing**

In Claim 3, Petitioner contends he was also denied due process and effective assistance of counsel during the sentencing hearing when his counsel failed to object to the prosecutor, Ms. Firpo, stating "we know of three or four victims" and "I am quite confident there are more than three or four victims of Mr. Schwenk" (RT 1304).  Petitioner contends that there was (a) no evidence to support those statements, (b) the District Attorney gave no notice of such allegations as required by law and (c) the statements were false.

A prosecutor's improper comments during closing argument may violate a defendant's right to due process if the argument "'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'"  Darden v. Wainwright, 477 U.S. 168, 181 (1986) (quoting Donnelly v. DeChristoforo, 416 U.S. 637, 643 (1974)).  "[T]he touchstone of due process analysis

in cases of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor." <u>Smith v. Phillips</u>, 455 U.S. 209, 219 (1982).

In summarily rejecting Petitioner's claim, the state court could reasonably have determined that the prosecutor's comments did not violate due process. The prosecutor's comments were supported by the evidence presented at trial and information provided in the probation report. In addition to Bryce, there was evidence presented during trial that Petitioner molested his daughter and his daughter's friend. <u>See</u> Dkt. 19, pp. 50, 52. The prosecutor also noted Petitioner's admission during his interview with probation that "he would manipulate situations with children for the purpose of being aroused." <u>Id</u>. at pp. 51-52. Old police reports indicated Petitioner "was giving children rides, picking them up from kindergarten and fondling them while he was driving." <u>Id</u>. at p. 52.

Even assuming <u>arguendo</u> that the prosecutor's comments were improper, the state court could reasonably have determined that the comments did not render the proceedings so unfair as to rise to the level of a due process violation because the sentencing court did not deviate from the tentative sentence it announced before the prosecutor ever made her allegedly inappropriate comments. Because the prosecutor's comments did not amount to a due process violation, it follows that defense counsel's failure to object to the prosecutor's comments did not violate Petitioner's right to effective assistance of counsel. Petitioner is not entitled to relief on Claim 3.

**Claim 4: Denial of Due Process**

In Claim 4, Petitioner contends that his admission of a prior conviction was not voluntary and intelligent under <u>Boykin v. Alabama</u>, 395 U.S. 238 (1969). In <u>Boykin</u>, the Supreme Court held that since a guilty plea is more than an admission of conduct, but "is itself a conviction," it must be voluntary and intelligent. <u>Boykin</u>, 395 U.S. at 242. To show that a defendant entered a guilty plea voluntarily and intelligently, the record must show that the defendant was aware of the rights to avoid self-incrimination, to trial by jury, and to confront and cross-examine witnesses. <u>Id</u>. at 243. "<u>Boykin</u> does not require specific articulation of the rights being waived by a guilty

plea," as long as the record "'affirmatively disclose[s] that a defendant who pleaded guilty entered his plea understandingly and voluntarily.'" United States v. Freed, 703 F.2d 394, 395 (9th Cir. 1983) (quoting Wilkins v. Erickson, 505 F.2d 761, 763 (9th Cir. 1974).

The Supreme Court has not yet considered whether Boykin applies to the admission of prior conviction allegations. See e.g. Morales v. Beard, No. 15-4069 DOC, 2016 WL 3344376, at *9 (C.D. Cal. June 7, 2016).[8] Therefore, the state court's denial of Petitioner's Boykin claim was not contrary to clearly established Supreme Court precedent. Even if Boykin applies to admissions of prior conviction allegations, the state court reasonably determined that Petitioner's admission of the prior conviction was voluntary and intelligent. The state court reasoned as follows:

> Defendant also claims that his admission of the prior conviction allegation in the second trial was not "voluntary and intelligent." Defendant focuses on the failure of the trial court to specifically advise him of the "right to a *jury* trial of the prior conviction" to argue that his admission was less than voluntary and intelligent. He asks that we reverse the doubled terms on counts one and two, as well as the two five-year enhancements of his sentence. According to the record, at the commencement of the second trial defense counsel indicated that defendant "admits he suffered a prior conviction for 288 in Stanislaus County in 1985." After consultation with counsel defendant agreed that he intended to admit the prior conviction allegations. The trial court engaged in a rather methodical discourse related to the admission. The court asked if defendant understood that upon admission of the prior "it's no different than if you pled guilty to something? That's no longer an issue for the *jury*." (Italics added.) Following a thorough explanation of the nature and consequences of admission of the prior conviction allegations, the court informed defendant that to enter the admission "you must waive and give up certain rights. You have the right to a *trial* ; the right to see and hear the witnesses against you testify under oath and through your attorney to question those witnesses; the right to remain silent and not incriminate yourself; and the right to present a defense, that is to testify in your own behalf, to present evidence and witnesses, and to use the court's subpoena power to bring evidence and witnesses before the court for your defense." (Italics added.) Defendant indicated that no promises or threats had been made to him, and he understood and waived his rights.

---

[8] The California Supreme Court, however, has applied the Boykin principles to the admission of a prior conviction. See People v. Mosby, 33 Cal.4th 353, 359-360 (2004).

CASE NO.: 5:14-CV-04971-EJD
ORDER GRANTING IN PART MOTION FOR EVIDENTIARY HEARING AS TO PORTION OF CLAIM 1; DENYING PETITION FOR WRIT OF HABEAS CORPUS AS TO CLAIMS 2THROUGH 7

18

To effectuate a valid "admission of prior felony convictions, the court must advise the accused of the right against compulsory self-incrimination, the right to confrontation, and the right to a jury trial. [Citations.] The trial court also must advise the accused of the penal consequences of admitting a prior conviction. '[A]n accused, prior to the time the court accepts his admission of an allegation of a prior criminal conviction or convictions, is entitled to be advised: (1) that he may thereby be adjudged an habitual criminal ...; (2) of the precise increase in the term or terms which might be imposed, if any ...; and (3) of the effect of any increased term or terms of imprisonment on the accused's eligibility for parole.' [Citation.]" (*People v. Sifuentes* (2011) 195 Cal.App.4th 1410, 1420.)

In the case before us, the sole challenge to the admonitions by defendant is directed to the court's explicit reference to the right to a trial rather than a *jury* trial. The rule has evolved that where the trial court failed "to provide specific admonitions of the rights surrendered by the admission of a prior-prison-term allegation, the validity of the admission depends not on express admonitions and waivers but on whether the admission was 'voluntary and intelligent under the totality of the circumstances.'" (*People v. Hinton* (2006) 37 Cal.4th 839, 875, fn. 12, quoting from *People v. Howard* (1992) 1 Cal.4th 1132, 1178.) "By adopting in *Howard* the federal constitutional test of whether under the totality of circumstances the defendant's admission is intelligent and voluntary, we rejected the rule that 'the absence of express admonitions and waivers requires reversal regardless of prejudice.' [Citation.] In replacing the old rule, the focus was shifted from whether the defendant received express rights advisements, and expressly waived them, to whether the defendant's admission was intelligent and voluntary because it was given with an understanding of the rights waived. After our *Howard* decision, an appellate court must go beyond the courtroom colloquy to assess a claim of *Yurko* error. [Citation.] Now, if the transcript does not reveal complete advisements and waivers, the reviewing court must examine the record of 'the entire proceeding' to assess whether the defendant's admission of the prior conviction was intelligent and voluntary in light of the totality of circumstances." (*People v. Mosby* (2004) 33 Cal.4th 353, 361.)

Upon our examination of the totality of circumstances we find that defendant's waiver of rights and admission of the prior conviction was voluntary and intelligent. The admonition of rights was immediately preceded by an exchange on the effect of an admission of the prior conviction upon the proceedings. The court advised defendant and his counsel that a stipulation would not prevent the jury from hearing of the prior conviction, whereas if defendant entered an admission, the prior conviction was "no longer for the jury to decide." The court repeated that if defendant wanted "to enter those admissions," and "do it with a full *Boykin–Tahl* waiver,"[4] then "they're not an issue for the jury." After consultation with counsel defendant agreed that he intended to admit the prior, and the court once again reiterated that if he did so, "[t]hat's no longer an issue for the jury."

In the context of the discussion of the admission, during which the role of the jury to decide the prior conviction allegation in the absence of an admission was emphasized, the court's subsequent advisement of defendant's right to a trial rather than a jury trial did not adversely impact his full understanding and waiver of rights. Further, at the first trial on

CASE NO.: 5:14-CV-04971-EJD
ORDER GRANTING IN PART MOTION FOR EVIDENTIARY HEARING AS TO PORTION OF CLAIM 1; DENYING PETITION FOR WRIT OF HABEAS CORPUS AS TO CLAIMS 2THROUGH 7

19

the charges a stipulation to the prior conviction was read to the jury, which contributes to the inference that defendant was aware of his right to a jury trial on the matter. Defendant's "'prior experience with the criminal justice system,'" although somewhat remote in time, also included a guilty plea after an admonishment of rights to the 1995 conviction, the same conviction which he admitted in the present case, which further demonstrates his awareness of rights. (*People v. Mosby, supra,* 33 Cal.4th 353, 364–365, citation omitted.) We conclude that the waiver and admission was valid. (*Id.* at p. 365.)

People v. Schwenk, 2013 WL 1898635, at *4-5 (footnote in original).

The transcript of the trial proceedings shows that Petitioner made a strategic decision to admit the prior conviction to prevent the jury from hearing about it. Defense counsel argued that there was "no need to read the special allegations" to the jury because Petitioner was stipulating to the prior conviction. Ex. 3 at pp.11-12 (Dkt. 19-1, pp. 14-15). In response, the prosecutor asked the court to read the entire information to the jury despite the offer to stipulate. Id. at p.13. When the court indicated that it was going to read the relevant parts of the information (the special allegations), defense counsel responded, "there's no – they don't have to be pled and proven if they're being stipulated to." Id. 14. The court disagreed, stating, "if the stipulation is an admission, then they're no longer for the jury to decide. The admission is the same as a plea of guilty. If Mr. Schwenk wants to do that, this is a nonissue. But a stipulation still means the jury is going to have to render a verdict on that." Id. at 13-14. Immediately after the trial court's comments, defense counsel said Petitioner would admit he suffered the prior. Id. at 14. The court's comments made clear to Petitioner that he had a right to jury trial on the prior.

Petitioner's understanding of the consequence of the admission can also be inferred from his experience from the first trial, during which Petitioner stipulated that he suffered the prior conviction and the stipulation was read to the jury. Ex. 2 at 178 (Dkt. 18-3, p. 195). The state court reasonably considered petitioner's prior experience with the criminal justice system in determining whether Petitioner's waiver was knowingly and voluntarily made. See Parke v. Raley, 506 U.S. 20, 37 (1992) ("We have previously treated evidence of a defendant's prior experience with the criminal justice system as relevant to the question whether he knowingly waived constitutional rights.").

CASE NO.: 5:14-CV-04971-EJD
ORDER GRANTING IN PART MOTION FOR EVIDENTIARY HEARING AS TO PORTION OF CLAIM 1; DENYING PETITION FOR WRIT OF HABEAS CORPUS AS TO CLAIMS 2 THROUGH 7

20

Even if admission of the prior conviction was erroneously entered, Petitioner has not shown prejudice. Petitioner does not dispute the validity of his prior conviction, and therefore admission of the prior did not have a "substantial and injurious effect or influence" on the judgment. Brecht v. Abrahamson, 507 U.S. 619, 637 (1993); see also Lowell v. Prunty, 91 F.3d 1358, 1359 (9th Cir.1996) (per curiam) (where defendant's alleged admission of three prior convictions was neither knowing nor voluntary, the error, if any, was harmless because defendant did not dispute validity of prior convictions). Petitioner is not entitled to relief on Claim 4.

## Claim 5: Violation of Double Jeopardy and Due Process Clauses

Petitioner contends that during the first trial, he was impliedly acquitted of the prior-conviction allegations and therefore his admission of the prior conviction in the second trial violated double jeopardy and due process. Petitioner also contends that defense counsel rendered ineffective assistance of counsel by failing to object to retrial of the prior conviction allegations. The state appellate court rejected Petitioner's double jeopardy claim reasoning as follows:

> Defendant was tried twice on the charges against him. He was charged in an information filed on October 24, 2008, with three counts of lewd conduct on a child (§ 288, subd. (a)), along with an allegation of a 1995 conviction of the same offense within the meaning of sections 667.51, subdivision (a), and 667, subdivisions (b) through (i). During the first trial defendant stipulated that he suffered the alleged prior conviction. At the conclusion of the trial the jury found defendant guilty of one count of lewd conduct on a child, not guilty of another count of lewd conduct on a child but guilty of a lesser misdemeanor assault offense (§ 240), and failed to reach a verdict on the third count. Before sentencing occurred, the court granted a new trial due to juror misconduct.
>
> An amended information filed on January 21, 2010, omitted the offense previously charged as count three, which resulted in the lesser assault offense conviction, and included only two counts of lewd conduct on a child, along with the prior conviction allegation under the provisions of sections 667.51, subdivision (a), 667.6, subdivision (a), and 667, subdivisions (b) through (i). Before trial, defendant admitted that he suffered the prior conviction, although the five-year enhancement allegation pursuant to section 667.6, subdivision (a), was stricken on motion of the People. Following the second trial, defendant was convicted of the two charged counts of lewd conduct on a child. The trial court imposed an aggregate term of 30 years in state prison, which included consecutive terms on the two convictions which were doubled for the prior strike, a five-year enhancement under section 667, subdivision (a), and another five-year enhancement under section 667.51, subdivision (a).
>
> Defendant argues that he was improperly charged with the prior conviction allegations in the amended information. He claims that he was "impliedly acquitted of the prior-

CASE NO.: 5:14-CV-04971-EJD
ORDER GRANTING IN PART MOTION FOR EVIDENTIARY HEARING AS TO PORTION OF CLAIM 1; DENYING PETITION FOR WRIT OF HABEAS CORPUS AS TO CLAIMS 2THROUGH 7

21

conviction allegations" in the first trial. Therefore, under double jeopardy principles he could "not ... be put twice in jeopardy for the same offense" in the second trial. He also maintains that his counsel was incompetent for failing to recognize and assert the double jeopardy prohibition against retrial of the prior conviction following the "implied finding" during the first trial that the enhancement allegations "were not true." Instead, defendant admitted the prior conviction—an admission defendant also challenges in this appeal.

"'The Fifth Amendment to the United States Constitution provides that "[n]o person shall ... be subject for the same offense to be twice put in jeopardy of life or limb...." This guarantee is applicable to the states through the Fourteenth Amendment. [Citation.] Similarly, article I, section 15, of the California Constitution provides: "Persons may not twice be put in jeopardy for the same offense...."' [Citation.]" (*Stanley v. Superior Court* (2012) 206 Cal.App.4th 265, 278.) "The double jeopardy bar protects against a second prosecution for the same offense following an acquittal or conviction, and also protects against multiple punishment for the same offense. [Citations.] Under both federal and California law, greater and lesser included offenses constitute the 'same offense' for purposes of double jeopardy. [Citations.] Thus, a conviction of a lesser included offense bars subsequent prosecution of the greater offense." (*People v. Bright* (1996) 12 Cal.4th 652, 660–661.)

However, defendant's contention that the double jeopardy attaches to prior conviction allegations is contrary to a long, unwavering line of case law. Both the United States Supreme Court and the California Supreme Court have definitively declared that the state and federal prohibitions against double jeopardy do not apply to proceedings in noncapital cases to determine the truth of prior conviction allegations, sentencing enhancements, or penalty allegations. (*Monge v. California* (1998) 524 U.S. 721, 734; *People v. Seel* (2004) 34 Cal.4th 535, 542; *People v. Barragan* (2004) 32 Cal.4th 236, 240–242; *People v. Monge* (1997) 16 Cal.4th 826, 829; *People v. Jenkins* (2006) 140 Cal.App.4th 805, 813–816.) Retrial of an alleged prior conviction is both permissible and proper. (*People v. Barragan, supra,* at p. 241.) We are not at liberty nor are we inclined to disregard or reconsider the holding of our high courts that the double jeopardy clause does not preclude retrial on a prior conviction allegation in a noncapital sentencing context. (*People v. Trujillo* (2006) 40 Cal.4th 165, 173–174.)

We also observe that the jury made no finding on the prior conviction allegation in the first trial. Neither the court nor the jury made a determination that the prosecution failed to prove its case. (*People v. Seel, supra,* 34 Cal.4th 535, 549–550.) When a trial produces neither an acquittal nor a conviction, retrial may be permitted if the trial ended "'without finally resolving the merits of the charges against the accused.' [Citation.]" (*People v. Anderson* (2009) 47 Cal.4th 92, 104; *People v. Johnston* (2003) 113 Cal.App.4th 1299, 1306–1307; *People v. Craney* (2002) 96 Cal.App.4th 431, 441–442; *People v. Salgado* (2001) 88 Cal.App.4th 5, 12–13.) In the context of a motion for new trial, unless the court rules that the evidence is insufficient as a matter of law—which did not occur here—the ruling does not bar retrial. (*United States v. DiFrancesco* (1980) 449 U.S. 117, 130–131; *Porter v. Superior Court* (2009) 47 Cal.4th 125, 135–136; *People v. Seel, supra,* at pp. 549–550; *People v. Hatch* (2000) 22 Cal.4th 260, 271.) Retrial of the prior conviction allegation was not error. It follows that counsel was not incompetent for failing to make an objection to retrial that would ultimately have proved futile. (*People v. Mendoza* (2000) 24 Cal.4th 130, 171.)

People v. Schwenk, 2013 WL 1898635, at *3-4.

CASE NO.: 5:14-CV-04971-EJD
ORDER GRANTING IN PART MOTION FOR EVIDENTIARY HEARING AS TO PORTION OF CLAIM 1; DENYING PETITION FOR WRIT OF HABEAS CORPUS AS TO CLAIMS 2THROUGH 7

As observed by the state appellate court, the Supreme Court has held that double jeopardy does not apply to proceedings in noncapital cases to determine the truth of prior conviction allegations, sentencing enhancements, or penalty allegations. Monge v. California, 524 U.S. 721, 734 (1998). The state appellate court's rejection of Petitioner's double jeopardy claim was therefore fully in accordance with, not contrary to, established Federal law, as determined by the Supreme Court of the United States. Petitioner's due process claim also fails because the due process clause does not provide greater double-jeopardy protection than does the Double Jeopardy Clause. See Sattazahn v. Pennsylvania, 537 U.S. 101, 116 (2003) ("We decline petitioner's invitation to hold that the Due Process Clause provides greater double-jeopardy protection than does the Double Jeopardy Clause."). Further, because any objection to the admissibility of Petitioner's prior conviction based upon the double jeopardy and due process clauses would have been futile, the state appellate court reasonably determined that defense counsel did not render ineffective assistance by failing to object. See James v. Borg, 24 F.3d 20, 27 (9th Cir. 1994). Petitioner is not entitled to habeas relief on Claim 5.

**Claim 6: Denial of Due Process Based Upon Sentence Enhancement For Prior Conviction**

Petitioner contends that his right to due process was violated when the trial court imposed a sentence enhancement for a prior conviction pursuant to Penal Code section 667.51, subdivision (a), because the section applies only to prior convictions that resulted in imprisonment, and not to prior convictions that resulted only in probation, such as in his case. The state appellate court rejected Petitioner's claim, reasoning as follows:

> Defendant also challenges the five-year enhancement imposed under section 667.51, subdivision (a), which in 2002, when the offenses were committed, specified a "five-year enhancement for a *prior conviction* of an offense listed in subdivision (b)," but also "provided that no additional term shall be imposed under this subdivision for any *prison term served* prior to a period of 10 years in which the defendant remained free of both prison custody and the commission of an offense that results in a felony conviction." (Italics added.) By 2010, when defendant was sentenced, section 667.51, subdivision (a), had been amended to omit the 10–year prior prison term wash-out provision. Defendant contends that his sentence must comply with the version of the statute in effect when the crimes were committed, which, he argues, required "a prior prison term" rather than a "prior conviction" to impose the enhancement. Defendant adds that "he did not serve a prior prison term" for

CASE NO.: 5:14-CV-04971-EJD
ORDER GRANTING IN PART MOTION FOR EVIDENTIARY HEARING AS TO PORTION OF CLAIM 1; DENYING PETITION FOR WRIT OF HABEAS CORPUS AS TO CLAIMS 2 THROUGH 7

his 1995 conviction, nor did the charge allege a prior prison term, so the enhancement pursuant to section 667.51, subdivision (a), is an unauthorized sentence and cannot stand.

To determine the meaning of the prior version of section 667.51, subdivision (a), "we are guided by familiar canons of statutory construction. '"[I]n construing a statute, a court [must] ascertain the intent of the Legislature so as to effectuate the purpose of the law." [Citation.] In determining that intent, we first examine the words of the respective statutes: "If there is no ambiguity in the language of the statute, 'then the Legislature is presumed to have meant what it said, and the plain meaning of the language governs.' [Citation.] 'Where the statute is clear, courts will not "interpret away clear language in favor of an ambiguity that does not exist." [Citation.]'" [Citation.] If, however, the terms of a statute provide no definitive answer, then courts may resort to extrinsic sources, including the ostensible objects to be achieved and the legislative history. [Citation.] "We must select the construction that comports most closely with the apparent intent of the Legislature, with a view to promoting rather than defeating the general purpose of the statute, and avoid an interpretation that would lead to absurd consequences." [Citation.]' [Citation.]" (*People v. Wade* (2012) 204 Cal.App.4th 1142, 1148–1149.)

Although defendant takes us through the legislative history and an explanation of the apparent purposes of former section 667.51, subdivision (a), we need not proceed beyond the plain language of the statute to arrive at an interpretation. In unambiguous terms the 2002 version of section 667.51, subdivision (a), imposed a five-year enhancement for "each prior conviction" of an offense listed in subdivision (b), not for a prior prison term served. Only the exception that prohibits imposition of the enhancement where the defendant remained free of both prison custody and the commission of the prior offense which resulted in a felony conviction for a period of 10 years, was based on "prison term" served. We cannot interpret the explicit term "prior conviction" to mean prior prison term. The language "prior conviction" is not ambiguous, has an established meaning distinct from a prior prison term, and controls our interpretation of the statute. (See *People v. Moore* (2011) 51 Cal.4th 1104, 1122–1123; *People v. Dunbar* (2012) 209 Cal.App.4th 114, 117; *People v. Wade, supra,* 204 Cal.App.4th 1142, 1148–1149.)

The Legislature has demonstrated the ability to impose enhancements on an entirely separate basis for prior prison terms served (§ 667.5, subd. (b)), but did not do so in this instance. The Legislature was also free to impose an enhancement for a prior conviction of enumerated offenses, but grant an exclusion for a 10–year wash-out period that is measured from the conclusion of a "prison term served."[ ]. Thus, as we interpret the former statute, the enhancement flowed from the prior conviction, but did not apply if a defendant who served a prior prison term for the felony conviction remained free of both custody and commission of another offense for 10 years. The section 667.51, subdivision (a), enhancement was properly imposed.

People v. Schwenk, 2013 WL 1898635, at *6-7.

The state appellate court's interpretation of state law is dispositive of Petitioner's claim. "[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." Estelle v. McGuire, 502 U.S. 62, 67-68 (1991); see also Bradshaw v. Richey, 546 U.S. 74, 76 (2005) ("We have repeatedly held that a state court's interpretation of

CASE NO.: 5:14-CV-04971-EJD
ORDER GRANTING IN PART MOTION FOR EVIDENTIARY HEARING AS TO PORTION OF CLAIM 1; DENYING PETITION FOR WRIT OF HABEAS CORPUS AS TO CLAIMS 2THROUGH 7

24

state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus."). "Absent a showing of fundamental unfairness, a state court's misapplication of its own sentencing laws does not justify federal habeas relief." Christian v. Rhode, 41 F.3d 461, 469 (9th Cir. 1994). Petitioner has not made a showing of fundamental unfairness resulting from the trial court's application of former §667.51(a). Accordingly, Petitioner is not entitled to habeas relief on Claim 6.

**Claim 7**: Denial of Due Process (Apprendi and Cunningham)

Petitioner contends the trial court's imposition of the upper term violated his rights to due process, trial by jury and proof beyond a reasonable doubt. Petitioner also contends that application of the discretionary sentencing scheme in effect after the offenses occurred violated the *ex post facto* clause. Petitioner further contends defense counsel rendered ineffective assistance by failing to object. The state appellate court rejected Petitioner's claims, reasoning as follows:

> Defendant's final contention is that the trial court erroneously imposed the upper term of eight years on count one without a jury finding beyond a reasonable doubt of the truth of the aggravating circumstances as required by the United States Supreme Court decisions in *Cunningham v. California* (2007) 549 U.S. 270, 274–275 (*Cunningham* ), and *Apprendi v. New Jersey* (2000) 530 U.S. 466, 490 (*Apprendi* ). Defendant points out that when he committed the crimes in 2002, the California determinate sentencing law (DSL) provided for a presumptive middle term in the triad of sentencing options, with an upper term sentence permissible only upon a finding of aggravating factors "found to be true by the court by a preponderance of the evidence," a sentencing scheme found violative of the Sixth Amendment in *Cunningham*. While the DSL sentencing scheme was subsequently amended to eliminate the presumptive middle term as the statutory maximum sentence by the date of sentencing in the present case, defendant argues that the amendments "cannot be applied" to his case "without violating the *Ex Post Facto* and Due Process clauses of the United States and California Constitutions."
>
> In *Apprendi,* the United States Supreme Court held "that, under the Sixth Amendment, 'any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt.' (*Apprendi, supra,* [530 U.S. 466,] 490.) In *Blakely v. Washington* (2004) 542 U.S. 296 [159 L.Ed.2d 403, 124 S.Ct. 2531], the high court extended the scope of *Apprendi* by defining 'statutory maximum' as the 'maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant.' (*Blakely, supra,* at p. 303, italics omitted; see *In re Gomez* (2009) 45 Cal.4th 650, 656 [88 Cal.Rptr.3d 177, 199 P.3d 574].)
> Applying *Blakely,* the court later held in *Cunningham v. California, supra,* 549 U.S. 270, that California's determinate sentencing law did not comport with a defendant's Sixth

CASE NO.: 5:14-CV-04971-EJD
ORDER GRANTING IN PART MOTION FOR EVIDENTIARY HEARING AS TO PORTION OF CLAIM 1; DENYING PETITION FOR WRIT OF HABEAS CORPUS AS TO CLAIMS 2THROUGH 7

United States District Court
Northern District of California

Amendment jury trial right. As *Cunningham* explained, 'If the jury's verdict alone does not authorize the sentence, if, instead, the judge must find an additional fact to impose the longer term, the Sixth Amendment requirement is not satisfied.' (*Cunningham, supra,* at p. 290.) Because the aggravating circumstances necessary for imposition of an upper term 'depend on facts found discretely and solely by the judge' (*id.* at p. 288), the 'statutory maximum' prescribed in California's sentencing scheme is not the upper term but rather the middle term (*ibid.*)." (*People v. Myles* (2012) 53 Cal.4th 1181, 1220.)

In response to *Cunningham,* by March of 2007, the California Legislature passed Senate Bill No. 40, which amended section 1170, subdivision (b), to eliminate the presumptive middle term, by providing: "When a judgment of imprisonment is to be imposed and the statute specifies three possible terms, the choice of the appropriate term shall rest within the sound discretion of the court." (Stats.2007, ch. 3, § 2.) Soon thereafter, in *People v. Sandoval* (2007) 41 Cal.4th 825, 843–844 (*Sandoval* ), the California Supreme Court judicially adopted the amendments to section 1170, and declared that the upper term sentence is now the statutory maximum; therefore, factors which a trial court may rely upon in imposing the upper term need not be decided by a jury beyond a reasonable doubt because they do not increase the penalty beyond the statutory maximum. The court also declared that the amended version of section 1170, subdivision (b), may be applied without constitutional violation to all sentencing proceedings conducted after the effective date of the amendments, even if the offense was committed prior to the effective date of the amendments. (*Sandoval, supra,* at pp. 852, 857; *People v. Jones* (2009) 178 Cal.App.4th 853, 866–867; *People v. Miller* (2008) 164 Cal.App.4th 653, 669.)

In *People v. Frandsen* (2011) 196 Cal.App.4th 266, 269, the defendant was convicted for involuntary manslaughter committed in 2002, and sentenced to the upper term of four years in 2010. The appellant in *Frandsen* contended, as does defendant here, that "the court violated [his] constitutional right to have a jury find every fact used in imposing punishment," (*id.* at p. 278) and ex post facto principles were violated by retroactive application of the amended version of section 1170, subdivision (b) to his crime committed before the reformation of the sentencing scheme to comply with *Cunningham.* The court in *Frandsen* adhered to the binding precedent announced in *Sandoval,* which held that "'the prohibition on ex post facto laws applies only to statutory enactments, not to judicial decisions' in upholding a trial court's authority to impose an upper term sentence based on facts found by the court. [Citations.]" (*Id.* at p. 279.) The court declared: "In light of section 1170 as construed by *Sandoval,* the trial court's imposition of the upper-term sentence in 2010, after the amendment to section 1170 and publication of *Sandoval* in 2007, is lawful." (*Ibid.*)

We also express our obligation and commitment to follow *Sandoval* (*Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455), and conclude that the imposition on defendant of an upper term on count one did not contravene Sixth Amendment or ex post facto principles. (*People v. Jones, supra,* 178 Cal.App.4th 853, 866–867.) Thus, counsel did not render ineffective representation by failing to object to the aggravated term.

People v. Schwenk, 2013 WL 1898635, at *7-8.

In Creech v. Frauenheim, 800 F.3d 1005, 1009 (9th Cir. 2015), the Ninth Circuit held that

"it was not contrary to or an unreasonable application of clearly established Supreme Court law

[for the state court] to conclude that California's revised determinate sentencing law, which

CASE NO.: 5:14-CV-04971-EJD
ORDER GRANTING IN PART MOTION FOR EVIDENTIARY HEARING AS TO PORTION OF CLAIM 1; DENYING PETITION FOR WRIT OF HABEAS CORPUS AS TO CLAIMS 2THROUGH 7

provides trial courts with discretion to decide among three sentences, is constitutional under *Apprendi v. New Jersey,* 530 U.S. 466, 490, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000)." The Ninth Circuit has also held that retroactive application of California's revised determinate sentencing law does not raise *ex post facto* concerns. Chioino v. Kernan, 58 F.3d 1182, 1185-86 (9th Cir. 2009) ("Remanding to state court for resentencing under the *Sandoval* procedure raises no ex post facto concerns."). Petitioner is not entitled to relief on this claim.

## V. CONCLUSION

For the reasons set forth above, the motion for an evidentiary hearing is GRANTED in part as to Claim 1.A. The scope of the evidentiary hearing is limited to whether defense counsel failed to convey the 13-year offer made by the prosecution on October 2, 2008; whether Petitioner would have accepted the 13-offer; and whether the sentencing court would have approved the offer. The petition is DENIED as to all of the remaining Claims. The Court will conduct a status conference on June 14, 2018 at 10:00 a.m. to discuss with the parties the procedures and schedule for the evidentiary hearing. The parties shall meet and confer and submit a joint status conference statement no later than June 4, 2018.

**IT IS SO ORDERED.**

Dated: April 27, 2018

_____
EDWARD J. DAVILA
United States District Judge

CASE NO.: 5:14-CV-04971-EJD
ORDER GRANTING IN PART MOTION FOR EVIDENTIARY HEARING AS TO PORTION OF CLAIM 1; DENYING PETITION FOR WRIT OF HABEAS CORPUS AS TO CLAIMS 2 THROUGH 7

27