UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| ERIC SCHWENK,<br><br>    Petitioner,<br><br>    v.<br><br>ROSEMARY NDOH, Warden, Avenal State Prison,<br><br>    Respondent. | Case No. 5:14-cv-04971-EJD<br><br>**ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS; FINDINGS OF FACT AND CONCLUSIONS OF LAW** |

Petitioner Eric Schwenk was convicted following a second jury trial of two counts of lewd acts upon a child (Penal Code §288) and admitted that he suffered a prior conviction of the same offense for purposes of sentence enhancement. Petitioner was sentenced to prison for a term of twenty-five (25) years. This Court held an evidentiary hearing on the issue of ineffective assistance of trial counsel based upon counsel's alleged failure to convey formal plea offers. Based on the following findings of fact and conclusions of law, the petition is GRANTED.

**I.    PROCEDURAL HISTORY**

Following his conviction in Humboldt County Superior Court, Petitioner filed a direct appeal and a petition for writ of habeas corpus in state court. The Court of Appeal for the First Appellate District, Division One, struck a 5-year enhancement and otherwise affirmed the judgment in May of 2013. The Court of Appeal summarily denied the habeas petition the same day. Petitioner next filed a petition for review and petition for writ of habeas corpus in the

CASE NO.: 5:14-CV-04971-EJD
ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS; FINDINGS OF FACT AND CONCLUSIONS OF LAW

1

California Supreme Court, which were both summarily denied. On March 18, 2014, Petitioner was resentenced to twenty-five (25) years.

Petitioner filed the instant habeas petition on November 10, 2014. Respondent filed an answer on the merits (Dkt. 17), and Petitioner filed a traverse (Dkt. 22). Petitioner also filed a motion for an evidentiary hearing (Dkt. 24). After an extensive review of the parties' submissions, the Court issued an Order Granting in Part Motion for Evidentiary Hearing as to Portion of Claim 1; Denying Claims 2 through 7 of Petition For Writ of Habeas Corpus (Dkt. No. 29). The Court limited the scope of the evidentiary hearing to whether defense counsel failed to convey a 13-year offer made by the prosecution on October 2, 2008; whether Petitioner would have accepted the 13-offer; and whether the sentencing court would have approved the offer.

Petitioner had an opportunity to conduct discovery, after which the Court granted Petitioner's motions to expand the scope of the evidentiary hearing to include evidence of two other possible offers, one dated April 9, 2009 (Dkt. No. 53) and the other dated October 9, 2008 (Dkt. No. 55).

The parties submitted trial briefs in advance of the evidentiary hearing as well as after the evidentiary hearing (Dkt. Nos. 60, 64, 67, 68, 70). Petitioner requests that the Court grant his petition for a writ of habeas corpus and order the District Attorney of Humboldt County to reinstate the October 2, 2008 offer. Pet'r's Proposed Findings of Fact and Conclusions of Law (Dkt. No. 75).

Petitioner also filed an Administrative Motion for the Court (1) to consider exhibits attached to the original petition for writ of habeas corpus as part of the evidentiary record and (2) to take judicial notice of letters from Petitioner's counsel to Petitioner (Dkt. No. 71). The Respondent filed an opposition to the Administrative Motion (Dkt. No. 72). The Court denies the Administrative Motion as untimely.

**II.    UNDERLYING STATE COURT TRIAL**

The opinion of the California Court of Appeal on direct appeal sets forth the facts

CASE NO.: 5:14-CV-04971-EJD
ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS; FINDINGS OF FACT AND CONCLUSIONS OF LAW

2

underlying Petitioner's conviction as follows[1]:

> Defendant was convicted of lewd acts committed in 2002 on Bryce B., the son of defendant's "girlfriend" Christie B.[2] Bryce was then 10 years old, and lived primarily in Eureka with Christie and defendant. Bryce had a "very trusting" relationship with defendant, and considered him "like a second father." Defendant often cared for Bryce at night while Christie worked.
>
> One night in 2002, Bryce was in the bedroom normally occupied by defendant and Christie, sleeping on his side, facing away from defendant. Christie was not present. Bryce awoke to find defendant's thumb and forefinger touching his penis. Bryce acted like he "was sleeping" for a couple of minutes while the touching continued, until the alarm went off and defendant "got up and got ready for work." Defendant did not say anything to Bryce, and never spoke to him about the "fondling" incident. Thereafter, Bryce "stayed away" from defendant, although defendant did not change his behavior toward Bryce. Bryce "didn't say anything about it" to his mother, or anyone else.
>
> Bryce also testified that a few months before the fondling occurred, defendant rented a pornographic movie that depicted "naked women" playing with "sex toys." He and defendant watched the movie for "awhile" in the bedroom. The same night—although Bryce was not sure if the movie was playing—he and defendant rubbed lotion on each other. Bryce recalled that he was wearing pajama bottoms, but no shirt.
>
> The two incidents went unreported to anyone until Bryce was 14 years old, and his father Andrew discovered that defendant was registered as a sex offender. Andrew told Christie he did not want defendant in the same house as Bryce. Christie then told Bryce that defendant may move out of the house, whereupon Bryce disclosed to her that while she was at work he "had gotten into bed" with defendant "because he was afraid of the dark." He awoke with defendant's "hand on his penis." Bryce asked Christie "not to tell anyone."
>
> The next morning Christie confronted defendant, and he told her "the same story." Defendant explained that while he was asleep he "had accidentally touched Bryce." When he awakened he was "horrified" at what occurred. He immediately told Bryce to "get out of the bed" and leave the room. Defendant was "sincerely upset and apologetic." He moved out of the house immediately. In subsequent conversations with Christie defendant reiterated that he apologized "for what he did."

---

[1] This summary is presumed correct. *Hernandez v. Small*, 282 F.3d 1132, 1135, n.1 (9th Cir. 2002); 28 U.S.C. §2254(e)(1).

[2] For the sake of clarity, convenience and confidentiality we will refer to Bryce, his mother Christie B, and father Andrew B. by their first names.

CASE NO.: 5:14-CV-04971-EJD
ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS; FINDINGS OF FACT AND CONCLUSIONS OF LAW

3

The molestation was not reported or discussed with anyone else until Bryce was 16 years old and attended counseling "on an unrelated issue." Bryce told the counselor he "was molested" by defendant. In turn, the counselor reported the molestation to the police. As part of the ensuing investigation the police officers directed Bryce to make a pretext phone call to defendant in an attempt to seek admissions from him. In response to Bryce's inquiry during the recorded telephone conversation defendant stated that he was not "trying to have sex" with the victim, and stopped when he "realized what [he] was doing." Defendant described the act as a "weird show of affection." He expressed that he knew "it was hurtful," and was "really sorry" he "hurt" Bryce.

Defendant testified that he had "clear recollection" of the molestation incident. After work that day he drank beer and smoked marijuana. He was "very much" intoxicated when he went to bed by himself around 10:00. Bryce was "on his computer" when defendant retired. When defendant awoke, he was lying on his side with his hand was on Bryce's penis. Defendant was "in shock["], and "freaked out" that Bryce was "even in there." He immediately removed his hand and directed Bryce to return to his own bedroom. The act was not intended, but just "happened."

According to defendant's testimony, the "massage incident" occurred when Bryce was 13 years old, long after the "bed incident." Defendant recalled that Bryce offered to put lotion on his back, and defendant agreed. Defendant then rubbed lotion on Bryce's back. They both had their shirts off, but were clothed from the waist down. Defendant insisted "there was nothing sexual about it."

As for watching "porn," defendant testified that on one occasion, entirely separate from the massage incident, he invited Bryce, who was then, "13 years old," to look at a movie of "Amazon women," naked from the waist up. No sexual acts occurred in the movie. After five or ten minutes Bryce became uncomfortable, so defendant changed the channel.

Defendant also offered testimony that described two separate events that resulted in his 1995 conviction for child molestation. Defendant admitted that he intentionally touched his daughter's friend "in the private area over her pajamas," when she was 10 or 11 years old, and sleeping over at the house. Thereafter, but also in 1995, defendant rolled over unintentionally and touched his daughter "in the privates," when she was in bed. When defendant realized he was touching his daughter he "stopped," and told her he "was sorry and that it would never happen again." As a result of his prior conviction, defendant was incarcerated, then placed on probation and received counseling.

Defendant's daughter, Rebecca W., essentially corroborated defendant's version of the incident with her. Rebecca testified that one night in 1995 she crawled into bed with her mother and defendant. For less than a minute defendant placed his hand on her genitals, then

CASE NO.: 5:14-CV-04971-EJD
ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS; FINDINGS OF FACT AND CONCLUSIONS OF LAW

4

> stopped. Rebecca was not even sure defendant was awake. When defendant realized "what he had done," he apologized and kissed Rebecca on the forehead before she left the room. Rebecca testified that on no other occasion did defendant engage in inappropriate conduct with her, and she was never angry with him. Rebecca believed the touching was an "honest mistake that he never meant to happen."
>
> Testimony was also adduced by the defense from defendant's son and a friend of defendant's mother that after the molestation incident Bryce did not change his behavior, appear to be uncomfortable around defendant, or express any "bad feelings" toward defendant. The witnesses did not notice any inappropriate conduct by defendant directed at Bryce.

*People v. Schwenk*, No. A129685, 2013 WL 1898635, at *1-3 (Cal. Ct. App. May 8, 2013) (footnote in original).

## III. FINDINGS OF FACT

### A. October 2, 2008 Offer

On October 2, 2008, Deputy District Attorney Kelly Neel ("Neel") appeared at a hearing and conveyed a plea offer to Petitioner via his counsel, Marek Reavis ("Reavis") to serve a total of thirteen (13) years for pleading guilty to a violation of Penal Code section 288 with an aggravated term plus an enhancement under Penal Code section 667.51. Neel advised Reavis that the offer must be accepted by the hearing scheduled for October 9, 2008 or it would be withdrawn. This offer was recorded in the District Attorney's file.

### B. October 9, 2008 Offer

On October 9, 2008, District Attorney Paul Gallegos ("Gallegos") wrote in the District Attorney's file: "possible midterm + prior due to △'s honest + apparent remorse." *Id.*, Ex. O. Next to this note, Deputy District Attorney Ben McLaughlin wrote "offer conveyed; rejected." *Id.*

### C. April 9, 2009 Offer

On April 9, 2009, the prosecution sent an email to Reavis, which stated in pertinent part:

> Our previous offer to resolve this case for Mr. Schwenck [sic] was to plead to Count I and admit the prior conviction. I understand that you have rejected that offer. I wanted to convey to you that I hope that your client will accept the offer on 4/16/09. If not, I believe the only reasonable thing to do is to ask to have the matter set for trial.

CASE NO.: 5:14-CV-04971-EJD
ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS; FINDINGS OF FACT AND CONCLUSIONS OF LAW

5

\*   \*   \*

> PC 288(a)(1) is a 3, 6, 8 year sentence scheme. I calculate that as a possible maximum sentence of 12 years without the strike which is 24 years doubled. The current offer exposes him to a maximum of 16 years. I will entertain discussion about agreeing to a midterm cap with the strike for a maximum possible sentence of 12 years. However, I cannot say that I would accept it.

*Id.*, Ex. A.

### D. The Offers Were Not Conveyed

The Court finds by a preponderance of evidence that Reavis did not convey the offers at issue to Petitioner. Petitioner testified under oath that Reavis never told him about the offers. RT 81, 86-96. Petitioner's testimony is consistent with the declaration of his mother, Joan Schwenk. Ms. Schwenk stated that she was in regular contact with Petitioner and that he never told her about any possible offers.

Although Reavis made generalized statements at the evidentiary hearing that he conveyed offers to Petitioner,[3] Reavis had no recollection of having conveyed any of the three offers at issue to Petitioner or of having advised him with respect to them. RT 19 (October 2 offer), 22 (October 9 offer), 29-30 (April 9 offer). Nor are there any records in Reavis's case file reflecting that he conveyed any of the three offers at issue to Petitioner. As to the October 2 offer in particular, there is no record of Reavis communicating with Petitioner at all between October 2 and October 9, 2008, which was the date of the intervention hearing and the date the October 2 offer was set to expire.[4] Petitioner was not in court on October 9, 2008, and therefore Reavis could not have conveyed the October 2 or the October 9 offers on that date.

Although Reavis testified that it was his practice to convey all offers to his client[5], there is

---

[3] Reporter's Transcript of Evidentiary Hearing ("RT") 40:10-11, 33, 59.
[4] Petitioner's counsel subpoenaed the Humboldt County Jail requesting all records of jail visits and/or interviews by Reavis with Petitioner between October 1 and 31, 2008. The Sheriff's Custodian of Records certified that a search had been conducted and "revealed no documents, records of other materials or images." Dkt. No. 60-1 at 75. The absence of records for jail visits, however, does not mean there were no jail visits. In fact, Petitioner and Reavis both testified at the evidentiary hearing that there were jail visits. RT 26-27, 40, 49, 85.
[5] RT 40-41; *see also* RT 44 (Reavis testified that he would convey offers even if his client said he really wanted to take the case to trial); 47 (Reavis testified he would make sure his client was

CASE NO.: 5:14-CV-04971-EJD
ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS; FINDINGS OF FACT AND CONCLUSIONS OF LAW

6

1  evidence that Reavis did not follow his practice in this case. The evidence shows that Reavis
2  rejected the October 9 offer on the same day that it was made. As discussed above, Petitioner was
3  not present in court on October 9, even though the purpose of the intervention hearing was to
4  negotiate a plea. Resp't Post Evidentiary Hr'g Br. at 7. Therefore, Reavis could not have
5  conveyed the October 9 offer to Petitioner. *See* Reavis Decl. ¶ 4 ("If Mr. Schwenk was not
6  present in court, I could not have conveyed the offer to him at that appearance.").

7  Respondent argues that Reavis's testimony is more credible than Petitioner's testimony in light of other evidence. First, Reavis responded to the April 9 offer via email dated June 25, 2009, telling Gallegos that Petitioner was prepared to accept an offer of supervised probation. Second, Reavis sent emails to Gallegos in September of 2009 stating that Reavis would speak to Petitioner about the offer. Third, Gallegos testified during his deposition that he had the impression Reavis was talking with Petitioner about the offers. Fourth, Petitioner admitted that he and Reavis discussed Petitioner's prior conviction and the possibility of being found a sexually violent predator (SVP) if he pled guilty. Petitioner remembered Reavis telling him "we shouldn't take a deal because you could be found as SVP and you could serve life in prison." RT 85. None of the evidence summarized above, however, directly contradicts Petitioner's testimony that Reavis did not convey the offers at issue. Reavis and Petitioner may have been in regular communication and discussed probation and the consequences of being found a SVP without ever specifically discussing the offers at issue. Indeed, the discussions about probation and concerns about being found a SVP may even explain the failure to convey any plea offers that included jail time. Reavis believed that due to recent changes in the SVP laws, a defendant who was found guilty of a sex offense and was sentenced to prison was potentially subject to a lifetime re-commitment as a SVP. It is conceivable that Reavis's conversations with Petitioner and Reavis's understanding of the changes in the SVP laws may have led Reavis to believe that it was pointless to convey the

---

aware of an offer before the date it was set to expire), 49 (Reavis testified that he cannot imagine any circumstance where he wouldn't convey "an offer like this before the intervention hearing").

CASE NO.: 5:14-CV-04971-EJD
ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS; FINDINGS OF FACT AND CONCLUSIONS OF LAW
7

October 2 and April 9 offers to Petitioner because they included jail time.

Respondent further contends that Petitioner has little credibility because his testimony during the evidentiary hearing is internally inconsistent and contradicts the record as well as Petitioner's prior declarations. The first alleged inconsistency is that Petitioner claimed in his petition that Reavis rendered ineffective assistance by failing to consult with a SVP expert, and yet during the evidentiary hearing, Petitioner denied that he would include such a claim in his petition because he had, in fact, been evaluated by a SVP expert. This argument is unpersuasive because the petition was prepared and signed by Petitioner's counsel, not Petitioner. Petitioner's counsel explained that the petition was prepared based on information in the record supplied by the attorney general, and there was no evidence in that record of Petitioner having been evaluated by a SVP expert. Reply To Resp's Post Evidentiary Hr'g Br. 7-8 (Dkt. No. 68). To the extent a mistake was made in the preparation of the petition, the Court finds that the mistake is attributable to Petitioner's counsel and does not impact the Court's assessment of Petitioner's credibility.

The second alleged inconsistency is that Petitioner testified that Reavis never told him about potential sentences, and yet Petitioner also admitted that Reavis told him the prosecution would try to have Petitioner sentenced to life in prison and two weeks later, Reavis told Petitioner he would not be sentenced to life. RT 83. Respondent's argument overlooks Petitioner testimony that Reavis did not explain his potential sentence in terms of a number or range of years. RT 83-84. Furthermore, based upon the Court's review of the entirety of the record, it is more likely than not that the references to a potential sentence to life in prison were made in the context of discussions about being found a SVP. The Court finds no inconsistency in Petitioner's testimony on this issue.

Respondent also contends that Petitioner's testimony that he was unaware of his potential sentence is inconsistent with the declaration he filed in support of his petition. In his October 31, 2012 declaration, Petitioner stated under penalty of perjury:

> 3. I do not believe that I am guilty, but I did believe that I could be found guilty of three counts of violation of section 288 and, because

CASE NO.: 5:14-CV-04971-EJD
ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS; FINDINGS OF FACT AND CONCLUSIONS OF LAW

8

> I had a prior "strike" conviction, I could be sentenced to 16 years for one count and 4 years for each of the other counts, plus 5 years for the prior, for a total of 29 years, so I probably would have accepted an offer of 16 years.

Dkt. No. 8 at 5-6, ¶ 3-4. This declaration suggests that Petitioner may have been aware of his potential sentence. Petitioner's counsel explains, however, that there is a "confusion of verb forms" in the declaration, and that what Petitioner meant to say was that if he had been informed of a 16-year offer and if he had also known that he was then facing a 29-year sentence, he probably would have accepted the 16-year offer. Reply To Resp's Post Evidentiary Hr'g Br. 9 (Dkt. No. 68). The Court agrees that there is a confusion of verb forms in the declaration, which is more indicative of counsel's drafting skills and not Petitioner's credibility.

Respondent cites to yet another paragraph of Petitioner's declaration to discredit Petitioner:

> 4. After my first trial . . . I thought I could be resentenced to 16 years for the one count of which I was found guilty, plus 5 years for the prior. . . . No one told me that, because the judge had not submitted the allegation of the prior to the jury, the most that I could have been sentenced to would have been 8 years. If I had known that, I would have urged by attorney to try to get the District Attorney to agree not to re-try the count on which the jury hung if I agreed to be sentenced on the count of which it found me guilty.

Dkt. No. 8 at 5-6, ¶ 4. Respondent contends that this paragraph of Petitioner's declaration conflicts with Petitioner's testimony that Reavis failed to discuss potential sentences. The Court finds that this paragraph of Petitioner's declaration supports an inference that Reavis told Petitioner what his potential sentence could be. Nevertheless, the Court finds that this paragraph, without more, is insufficient to discredit Petitioner's testimony that Reavis did not convey the offers at issue.

The third alleged inconsistency is that Petitioner testified that Gallegos "raised the possibility of probation" in the trial court, but the transcript of the hearing included no such statement and Gallegos testified that probation was never an option. Resp't Post Evidentiary Hr'g Br. 9. There is no obvious inconsistency between Petitioner's and Gallegos's testimony to

1  discredit Petitioner. To the contrary, Petitioner testified clearly that the possibility of probation

2  "wasn't an official deal." RT 81.

3  Having considered the totality of the record, the Court finds Petitioner's testimony is more

4  credible than Reavis's generalized assertions that he conveyed offers to Petitioner.

## IV. CONCLUSIONS OF LAW

### A. Standard for Habeas Corpus Review

This Court may entertain a petition for a writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a); *Rose v. Hodges*, 423 U.S. 19, 21 (1975). The writ may not be granted with respect to any claim that was adjudicated on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). The only definitive source of clearly established federal law under 28 U.S.C. § 2254(d) is in the holdings (as opposed to the dicta) of the Supreme Court as of the time of the state court decision. *Williams*, 529 U.S. at 412; *Brewer v. Hall*, 378 F.3d 952, 955 (9th Cir. 2004). While circuit law may be "persuasive authority" for purposes of determining whether a state court decision is an unreasonable application of Supreme Court precedent, only the Supreme Court's holdings are binding on the state courts and only those holdings need be "reasonably" applied. *Clark v. Murphy*, 331 F.3d 1062, 1069 (9th Cir.), *overruled on other grounds by Lockyer v. Andrade*, 538 U.S. 63 (2003).

"Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Williams*, 529 U.S. at 413. "Under § 2254(d)(1)'s 'unreasonable application' clause, . . . a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411. A federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable." *Id.* at 409. The federal habeas court must presume to be correct any determination of a factual issue made by a state court unless the petitioner rebuts the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

The Supreme Court has vigorously and repeatedly affirmed that under AEDPA, a federal habeas court must give a heightened level of deference to state court decisions. *See Hardy v. Cross*, 565 U.S. 65 (2011) (per curiam); *Harrington v. Richter*, 562 U.S. 86, 101 (2011); *Felkner v. Jackson*, 562 U.S. 594, 131 S. Ct. 1305 (2011) (per curiam). As the Court explained: "[o]n federal habeas review, AEDPA 'imposes a highly deferential standard for evaluating state-court rulings' and 'demands that state-court decisions be given the benefit of the doubt.'" *Id.* at 1307 (citation omitted).

### 1. Standards For Claim of Ineffective Assistance of Counsel

To prevail on an ineffective assistance of counsel claim, a defendant must show that counsel's performance "fell below an objective standard of reasonableness." *Strickland v. Washington*, 466 U.S. 668, 688 (1984). A defendant must also show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. "A court considering a claim of ineffective assistance must apply a 'strong presumption' that counsel's representation was within the 'wide range' of reasonable professional assistance." *Id.* at 689. The petitioner must show that counsel's errors were so

CASE NO.: 5:14-CV-04971-EJD
ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS; FINDINGS OF FACT AND CONCLUSIONS OF LAW

11

serious that counsel was not functioning as the counsel guaranteed the defendant by the Sixth Amendment. *Id*. at 687.

When reviewing a claim of ineffective assistance of counsel, the federal court must "use a 'doubly deferential' standard of review that gives both the state court and the defense attorney the benefit of the doubt." *Burt v. Titlow*, 571 U.S. 12, 13 (2013). "When §2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Premo v. Moore*, 562 U.S. 115, 123 (2011).

Where, as in the instant case, the state court summarily denies an ineffective assistance of counsel claim without providing a written analysis, the habeas court "must determine what arguments or theories supported or, as here, could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of this Court." *Harrington*, 562 U.S. at 102. This applies to both prongs of an ineffective assistance claim. *See Premo*, 562 U.S. at 123 (where state court did not specify whether denial was based on performance or prejudice prongs or both, "[t]o overcome the limitation imposed by § 2254(d), the Court of Appeals had to conclude that both findings would have involved an unreasonable application of clearly established federal law").

### a. Failure to Convey Plea Offers

The Sixth Amendment right to counsel extends to the plea-bargaining process. *Lafler v. Cooper*, 566 U.S. 156, 162 (2012). "[A]s a general rule, defense counsel has the duty to communicate formal offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused." *Missouri v. Frye*, 566 U.S. 134, 145 (2012). "[T]he fact of a formal offer means that its terms and its processing can be documented so that what took place in the negotiation process becomes more clear if some later inquiry turns on the conduct of earlier pretrial negotiations." *Id*. at 146. "To show prejudice from ineffective assistance of counsel

1    where a plea offer has lapsed or been rejected because of counsel's deficient performance,

2    defendants must demonstrate a reasonable probability they would have accepted the earlier plea

3    offer had they been afforded effective assistance of counsel." *Id*. at 147. "Defendants must also

4    demonstrate a reasonable probability the plea would have been entered without the prosecution

5    canceling it or the trial court refusing to accept it, if they had the authority to exercise that

6    discretion under state law." It is also necessary to show a reasonable probability that the end result

7    of the criminal process would have been more favorable by reason of a plea to a lesser charge or a

8    sentence of less prison time. *See id*.

### B. The Prosecution Made Formal Offers That Were Not Conveyed to Petitioner

Petitioner contends that his counsel received but failed to communicate three formal offers: the October 2, 2008 offer ("October 2 offer"), the October 9, 2008 offer ("October 9 offer") and April 9, 2009 offer ("April 9 offer"). The Court finds by a preponderance of evidence that the October 2 and April 9 offers are documented with terms that are sufficiently clear to determine what took place during the negotiations. The October 2 offer was for Petitioner to serve a total of thirteen (13) years for pleading guilty to a violation of Penal Code section 288 with an aggravated term plus an enhancement under Penal Code section 667.51. The prosecution told Petitioner's counsel the offer would expire on October 9, 2009. The April 9 email offer clearly stated that the offer of count 1 plus the prior would expose Petitioner to a maximum sentence of 16 years. The offer also stated that the prosecution would entertain discussion about a maximum possible sentence of 12 years. The offer also had a clearly stated expiration date of April 16, 2009. Therefore, the October 2 and April 9 offers were formal offers. *Missouri v. Frye*, 566 U.S. at 146 ("[T]he fact of a formal offer means that its terms and its processing can be documented so that what took place in the negotiation process becomes more clear if some later inquiry turns on the conduct of earlier pretrial negotiations.").

In contrast, the October offer for a "possible midterm + prior" is unclear. When asked to interpret his own handwriting, Gallegos responded:

> I don't know.  It looks like – yeah, I truly don't know.  I don't know if this is indicating that – so – yeah.  I'm not sure if this is indicating – yeah, I don't know. I truly don't know.  Maybe that I'm considering it.  I don't know.
>
> I remember that – oh, you know what.  This – what this probably is – and I'm just sort of trying to recall in general because the case was – if Marek had come to me with this, that I was going to talk to the victim's family.  I know there was a lot of talk between Marek and I, and I always talked to victims, just to let them know.  So it's probably me noting that there might be a resolution like that, if it's acceptable to the family, I would imagine, or ultimately the decision would be mine but –  the short answer is I don't know. The probable interpretation of that, based on imperfect recollection, is it's me noting that, yeah, maybe there's room for discussion.

Gallegos Depo. 16-17.   Gallegos's testimony confirms that the October 9 offer lacked sufficient clarity to constitute a formal offer under *Missouri v. Frye*.

The Court finds by a preponderance of the evidence that neither of the two formal offers of October 2 and April 9 were conveyed to Petitioner for reasons already discussed above in the Findings of Fact section of this order.

### C. There is a Reasonable Probability That Petitioner Would Have Accepted The Offers If They Had Been Conveyed

The Court finds by a preponderance of evidence that there is a reasonable probability that Petitioner would have accepted the offers if they had been conveyed.  Petitioner asserted in his declaration that he "probably would have accepted an offer of 16 years."[6]  In a supplemental declaration, Petitioner asserted that "I would have taken any of [the offers]."  Petitioner's Supp. Decl., ¶3 (Dkt. 8, p. 11).  Petitioner also testified during the evidentiary hearing that he "most definitely" would have taken an offer of a sentence of 6 to 16 years.  RT 71.  More specifically, Petitioner testified that he would have accepted the October 2 offer of 13 years. *Id*. 71-72.  That Petitioner was facing a significantly higher aggregate sentence is also circumstantial evidence that Petitioner would have accepted the October 2 offer.

---

[6] Decl. of Eric Schwenk, ¶3 (Dkt. 8, p. 6)

CASE NO.: 5:14-CV-04971-EJD
ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS; FINDINGS OF FACT AND CONCLUSIONS OF LAW

14

Respondent argues that Petitioner's testimony is not credible. According to Respondent, there is no reasonable probability that Petitioner would have accepted an offer because Petitioner told Reavis before the October 2 and 9 offers that he was innocent and wanted to take his case to trial. RT 77, 78, 83; *see also* Pet'r's Decl., ¶3 (Dkt. 8, p. 5). Respondent also points out that Petitioner testified only that he "would have been inclined" to accept offers, not that he was certain he would accept the offers. Respondent also relies on the testimony of Reavis, Neel and Gallegos to refute Petitioner. Each of these three witnesses believed that Petitioner was not willing to accept any offer for a prison term. RT 34, 51; Neel Depo. 16:3-24; Gallegos Depo. 28:22-24.

The Court recognizes that Petitioner's protestations of innocence may undercut his credibility. *Belton v. Knipp*, No. 12-3582 BLF, 2014 WL 3345793, at *14 (N.D. Cal. June 27, 2014) (finding that defendant's protestations of innocence may undercut the credibility of a hindsight claim that a rejected offer would have been accepted); *see also Tapia v. Holland*, No. 14-1692 ODW, 2015 WL 1809331, *27 (C.D. Cal. March 9, 2015) (petitioner's consistent protestations of innocence weighs against petitioner's assertion that he would have accepted a plea offer but for counsel's allegedly negligent advice). Concerns about being found a SVP could also have discouraged Petitioner from taking an offer. Nevertheless, Petitioner need only present evidence of a "reasonable probability," not absolutely certainty, that he would have accepted a formal offer if it had been conveyed. *Missouri v. Frye*, 566 U.S. at 147. Petitioner's evidence is sufficient to meet this standard.

**D.    There is a Reasonable Probability The Plea Would Have Been Entered**

There is a reasonable probability that Petitioner's plea would have been entered without the prosecution canceling it or the trial court refusing to accept it. Reavis stated in his declaration that he believed the judge who presided at the October 2 and October 9 hearings "may very well have accepted it." Reavis Decl. ¶ 5 (Dkt. No. 60-1 at 77). Deputy District Attorney Ben McLaughlin, who appeared at the October 9 hearing, also testified at deposition that courts give a

1   lot of deference to both parties when there is a negotiated disposition. McLaughlin Dep. at 17. He

2   also testified that he did not have any reason to believe that the sentencing court would not have

3   approved of a plea bargain for 13 years. *Id*. Further, the offers made to Petitioner's counsel

4   appear to be within the range of pleas accepted by Judges in Humboldt County in comparable

5   cases. Dkt. No. 60-1, pp. 87-108.

### E. Acceptance of a Formal Offer Would Have Led to More Favorable End Result

Acceptance of any of the formal offers would have led to a more favorable result than the 25-year sentence Petitioner is now serving.

### F. Remedy

For the reasons discussed above, counsel's failure to convey formal plea offers to Petitioner resulted in a denial of Petitioner's right to the effective assistance of counsel under the United States Constitution. *Missouri v. Frye*, 566 U.S. at 145. This Court further finds that the state court's rejection of Petitioner's habeas claim was unreasonable under section 2254(d)(1) and (2). Therefore, Petitioner is entitled to habeas relief.

The "classic" relief afforded by a writ of habeas corpus is release. *Nunes v. Mueller*, 350 F.3d 1045, 1057 (9th Cir. 2003). Federal courts, however "may delay the release of a successful habeas petitioner in order to provide the State an opportunity to correct the constitutional violation found by the court." *Id*. (quoting *Hilton v. Braunskill*, 481 U.S. 770, 775 (1987)). **"[**A]ny habeas remedy 'should put the defendant back in the position he would have been in if the Sixth Amendment violation never occurred.'" *Id*.

Here, the constitutional violation consisted of counsel's failure to communicate formal plea offers. To place Petitioner back in the position he would have been if the constitutional violation had not occurred, the state must reinstate its October 2 offer. *Lafler*, 566 U.S. at 174; *Nunes*, 350 F.3d at 1057 (remanding to district court with directions to order state to release petitioner within 120 days unless it offers petitioner the same material terms that were contained in its original plea offer).

CASE NO.: 5:14-CV-04971-EJD
ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS; FINDINGS OF FACT AND CONCLUSIONS OF LAW

## V. ORDER

For the reasons stated above, the petition for a writ of habeas corpus is GRANTED. The District Attorney of Humboldt County is ordered to reinstate the offer of October 2, 2008. If the offer is accepted, Petitioner's conviction shall be vacated. If the Superior Court does not approve the plea bargain, then plea-bargaining shall resume.

**IT IS SO ORDERED.**

Dated:  May 29, 2020

EDWARD J. DAVILA
United States District Judge

CASE NO.: 5:14-CV-04971-EJD
ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS; FINDINGS OF FACT AND CONCLUSIONS OF LAW
17